UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-452-RGK (SGLx) | Date | 2-9-06 |
|---|---|---|---|
| Title | *CLASSIC MEDIA, INC. v. WINIFRED KNIGHT MEWBORN* | | |

| Present: The Honorable | R. GARY KLAUSNER, U.S. DISTRICT JUDGE | |
|---|---|---|
| Sharon L. Williams | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

Proceedings:    (IN CHAMBERS) PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 33); DEFENDANT'S MOTION FOR PARTIAL SUMMARY ADJUDICATION (DE 34)

I.    **INTRODUCTION**

Plaintiff/Counterclaim Defendant Classic Media, Inc. ("Classic") and Defendant/Counterclaimant Winifred Knight Mewborn ("Mewborn") each seek declaratory relief as to their respective copyright interests in the famous children's story and novel, "Lassie Come Home" ("Lassie Works"). The dispute allegedly arose when Classic began production of a motion picture based on the Lassie Works, and Mewborn demanded a share of the profits based on her alleged 25% interest in the Lassie Works. Both Classic and Mewborn now seek summary judgment. For the following reasons, this Court finds summary judgment in favor of Classic.

DOCKETED ON CM

FEB 1 0 2006

BY _____ 012

II.    **FACTUAL BACKGROUND**

A.    **The Lassie Works**

The Lassie Works were created by author, Eric Knight, and registered with the U.S. Copyright Office. Eric Knight died in 1943. Because he died prior to the expiration of the first terms of copyrights in the Lassie Works, the renewal interest in these copyrights under the 1909 Copyright Act passed to his wife, Ruth Jere Knight, and three daughters, Defendant Mewborn, Betty Knight Meyers and Jennie Knight Moore. Each of the heirs filed copyright renewals sometime between 1965 and 1967.

B.    **The 1976 Assignment**

By written assignment dated July 14, 1976, Mewborn granted her share of motion picture, television and radio rights to Lassie Television, Inc. ("LTI") for $11,000 ("1976 Assignment").

C.    **The 1976 Copyright Act**

After Mewborn's 1976 Assignment, Congress enacted the 1976 Copyright Act (the "1976 Act"), which took effect on January 1, 1978. Among other things, the 1976 Act extended the length of copyright protection for copyrights existing on January 1, 1978, such as those in the Lassie Works. The 1976 Act extended the length of copyright protection from fifty-six (56) years to seventy-five (75) years. The 1976 Act also created a right of termination, enabling authors and certain specified heirs to recapture, for the extended renewal term, rights in works that had previously been transferred to third parties ("§304(c) right"). However, those heirs to whom the 1976 Act applied, were permitted to terminate only those transfers executed before January 1, 1978. The recapture of the extended renewal term could be effected during a five year period beginning at the end of the fifty-six years from the date the copyright was originally secured.

### D.    The 1978 Assignment

On March 16, 1978, Mewborn entered into another agreement assigning to LTI all motion picture, television, radio, recording and dramatic rights, and all merchandising, commercial tie-up and related rights, and certain publication rights ("1978 Assignment"). In exchange, Mewborn received $3,000.

### E.    The Parties' Dispute

In the first part of 1996, Mewborn served on Palladium Limited Partnership, LTI's then successor-in-interest in the Lassie Works, a notice of termination pursuant to the 1976 Act ("1996 Termination Notice"). The 1996 Termination Notice sought to terminate Mewborn's 1976 Assignment.

On March 23, 2005, Mewborn's attorney sent a letter to Classic, which is the alleged present owner and successor-in-interest to the Lassie Works, and its production partners. The letter stated that, as of May 1, 1998, Mewborn owned 25% of the Lassie Works by virtue of the 1996 Termination Notice. As such, Mewborn demanded that Classic account for and pay to Mewborn 25% of all profits generated and/or received from the exploitation of Classic's film based on the Lassie Works ("Lassie Film"). The Lassie Film was released in U.K. theaters on December 16, 2005.

On May 27, 2005, Classic filed this action against Mewborn seeking declaration that Mewborn has no interest in the Lassie Film or in any of the rights she previously assigned to LTI.  On June 29, 2005, Mewborn counterclaimed against Classic seeking declaration that she recaptured some of the rights she previously assigned to LTI, and requesting an accounting of Classic's profits.[1]

## III.    JUDICIAL STANDARD

Under the Federal Rules of Civil Procedure, summary judgment is proper only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Upon such a showing, the Court may grant summary judgment "upon all or any part thereof." Fed. R. Civ. P. 56(a), (b).

To prevail on a summary judgment motion, the moving party must show there are no triable issues of fact as to matters upon which it has the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). On issues where the moving party does not have the burden of proof at trial, the moving party is required only to show that there is an absence of evidence to support the nonmoving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. at 326.

---

[1] In her original Counterclaim, Mewborn also included a fourth claim for Violation of Lanham Act. This claim was dismissed with prejudice by order of the court, dated September 28, 2005.

To defeat a summary judgment, the non-moving party may not merely rely on its pleadings or on conclusory statements. Fed. R. Civ. P. 56(e). Nor may the non-moving party merely attack or discredit the moving party's evidence. *National Union Fire Ins. Co. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983). The non-moving party must affirmatively present specific admissible evidence sufficient to create a genuine issue of material fact for trial. *See Celotex Corp v. Catrett*, 477 U.S. at 324.

## IV.   **DISCUSSION**

Classic contends that, in the 1978 Assignment, Mewborn transferred the rights previously assigned in the 1976 Assignment ("Original Rights"), but also included an assignment of new and different rights (including recording, dramatic and merchandising rights) ("Additional Rights"). Moreover, Classic contends that Mewborn also transferred her right of termination under the 1976 Act. According to Classic, LTI paid Mewborn additional compensation to give up those rights. Because the agreement was supported by additional consideration and obligations on both sides, Classic argues that the 1978 Assignment is a new agreement that supercedes the 1976 Assignment. Therefore, the 1996 Notice of Termination did not effectuate a reversion of interests because all rights, including motion picture rights, were assigned to LTI in 1978, after the date upon which the termination rights were applicable. In contrast, Mewborn argues that the 1978 Assignment transferred only the Additional Rights because the Original Rights were no longer hers to transfer at that time. Therefore, Mewborn asserts that the 1996 Notice of Termination caused a reversion of motion picture, television and radio rights, which had been assigned to LTI prior to January 1, 1978, by virtue of the 1976 Assignment.

There is no dispute that any rights assigned to LTI by the 1976 Assignment would revert to Mewborn if her 1996 Notice of Termination was, in fact, effective. It is also undisputed that any rights assigned to LTI by the 1978 Assignment remain assigned to LTI's successors-in-interest irrespective of Mewborn's attempt to terminate the 1976 transfer. Therefore, the primary question is what rights were assigned to LTI, and when were those assignments made. Determination of that question hinges on this Court's interpretation of the contracts and the legal effect of that interpretation.

California law has long established that the fundamental canon of interpreting written instruments is the ascertainment of the intent of the parties. *Ticor Title Ins. Co v. Rancho Santa Fe Assoc.*, 177 Cal. App. 3d 726, 730 (1986). "As a rule, the language of an instrument must govern its interpretation if the language is clear and explicit." *Id.* Moreover, the court must consider the language in light of the instrument as a whole, rather than a disjointed, single-paragraph, strict construction approach. *Id.* (quoting *Ezer v. Fuchsloch*, 99 Cal. App. 3d 849, 861 (1979)). Extrinsic evidence may be considered by the Court to help in its ascertainment of the parties' intent, as long as it is not used to add to, detract from, or vary the terms of the contract. *Pacific Gas & Electric Co. v. G. W. Thomas Drayage & Rigging Co.*, 69 Cal. 2d 33, 38-40 (1968).

For the following reasons, the Court finds that the parties intended for the 1978 Assignment to transfer all of Mewborn's Additional Rights. Such transfer includes relinquishment of her §304(c) right to terminate the 1976 Assignment. On July 14, 1976, in exchange for $11,000, Mewborn transferred to LTI "[a]ll motion picture (including musical motion picture), television and radio rights in and to the [Lassie Works]. . .." (Moss Decl., Exh. I.) Then, on March 16, 1978, in exchange for an additional $3,000, Mewborn again, assigned to LTI "(a) all motion picture (including musical motion picture) rights, television rights, radio rights, recording rights, . . ." (Moss Decl., Exh. J, p. 1.) In addition, Mewborn also assigned "dramatic rights on the legitimate stage . . .; and all merchandising, commercial tie-up and related rights, and certain publication rights . . .." *Id.* The 1978 contract contains no express language revoking the prior contract, and Classic has not introduced extrinsic evidence showing such an intent. In fact, further language in the contract indicates quite the opposite: "The rights granted herein to [LTI] are in addition to the rights granted by me to [LTI] under and pursuant to an assignment dated July 14, 1976, . . .." *Id.* However, by the time Mewborn

entered into the 1978 Assignment, the 1976 Act had already taken effect, giving her a right to terminate any pre-1978 transfers. While this termination interest is inalienable pursuant to the language of the statute, such an interest may be waived or relinquished. *See Milne v. Stephen Slesinger, Inc.*, 430 F.3d 1036 (9th Cir. 2005). Although the 1978 Assignment does not contain express language of waiver or relinquishment, a review of the contract as a whole, along with consideration of the 1976 contract, shows such an intent. Because Mewborn had already transferred her interest in all motion picture, television and radio rights in 1976, the only reasonable interpretation of the 1978 contract language is that she intended to give away any additional motion picture, television and radio rights not given away in 1976, thus relinquishing her newly acquired right of termination.

To support her opposing position, Mewborn points to the contract language that specifies: "All of the foregoing rights are granted to [LTI] throughout the world in perpetuity, to the extent such rights are owned by me, as hereinafter provided. ...The rights granted herein to [LTI] are in addition to the rights granted by me to [LTI] under and pursuant to an assignment dated July 14, 1976, . . .." *Id.* at 3. Mewborn argues that this language keeps the 1976 transfer intact and unrevoked by the 1978 contract, and therefore, the 1996 Notice of Termination effectuated a reversion of those rights assigned in the 1976 contract. This Court agrees that the 1976 contract remains intact. However, Mewborn's argument does not alter the Court's finding that, in the 1978 Assignment, she intended to give away all her remaining rights in motion picture, television and radio, including her right of termination. The 1978 contract did not revoke her prior transfer, but rather addressed any new or additional rights she had in the copyright. Such rights included the Additional Rights, as well as her newly acquired right of termination under the 1976 Act. Therefore, the language upon which Mewborn relies is not inconsistent with this Court's finding that Mewborn intended to relinquish her right of termination by way of the 1978 Assignment.

In light of the above, the Court finds that 1978 Assignment did not substitute the 1976 Assignment, but rather gave up the Additional Rights to LTI including relinquishing Mewborn's right of termination under the 1976 Act. As a result of this relinquishment, her 1996 Notice of Termination was ineffective, and Mewborn has no interest in the rights transferred under the 1976 and 1978 Assignments.

## V.   CONCLUSION

Based on the foregoing, this Court **grants** Classic's Motion for Summary Judgment. Mewborn's Motion for Partial Summary Judgment is **denied as moot.** Classic is ordered to submit a Proposed Final Judgment consistent with this Order within 10 days from the date of this Order.

**IT IS SO ORDERED.**

Initials of Preparer              slw