SEND, CLOSED

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ED CV 05-452-RGK (SGLx) | Date | April 12, 2006 |
|---|---|---|---|
| Title | *CLASSIC MEDIA, INC. v. WINIFRED KNIGHT MEWBORN, et al.* | | |

**Present: The Honorable** R. GARY KLAUSNER, U.S. DISTRICT JUDGE

| Sharon L. Williams | Not Reported | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:          Attorneys Present for Defendants:

Not Present                               Not Present

**Proceedings:**    **(IN CHAMBERS) PLAINTIFF'S MOTION FOR ATTORNEYS FEES (DE 53)**

[stamp: DOCKETED ON CM APR 13 2006 BY 012]

## I.    INTRODUCTION

On March 3, 2006, Plaintiff/Counterclaim Defendant Classic Media, Inc. ("Classic") filed this Motion for Attorneys' Fees against Defendant/Counterclaimant Winifred Knight Mewborn ("Mewborn"). The dispute allegedly arose when Classic began production of a motion picture based on the famous children's story and novel, "Lassie Come Home" ("Lassie Works"), and Mewborn demanded a share of the profits based on her alleged 25% interest in the Lassie Works. Classic and Mewborn each filed suit seeking declaratory relief as to their copyright interests in the Lassie Works. In January 2006, both Classic and Mewborn moved for summary judgment of the dispute. On February 9, 2006, the Court granted Classic's Motion for Summary Judgment and denied Mewborn's motion as moot. Classic now brings the present Motion for Attorneys' Fees.

## II.    FACTUAL BACKGROUND

### A.    The Lassie Works

The Lassie Works were created by Eric Knight and registered with the U.S. Copyright Office in 1938. Knight died in 1943. Because he died before the copyright terms in the Lassie Works expired, the renewal interest in these copyrights under the 1909 Copyright Act passed to his wife, Ruth Jere Knight, and their three daughters, Defendant Mewborn, Betty Knight Meyers, and Jennie Knight Moore. Each of their heirs filed copyright renewals sometime between 1965 and 1967.

### B.    The 1976 Assignment

On July 14, 1976, Mewborn made a written assignment of motion picture, television, and radio rights to Lassie Television, Inc. ("LTI") for $11,000 ("1976 Assignment").

---

## C.    The 1976 Copyright Act

After Mewborn's 1976 Assignment, Congress enacted the 1976 Copyright Act (the "1976 Act"), which took effect on January 1, 1978. The 1976 Act extended the length of copyright protection for copyrights existing on January 1, 1978, such as those in the Lassie Works, from fifty-six (56) years to seventy-five (75) years. The 1976 Act also created a right of termination, enabling authors and certain specified heirs to recapture, for the extended renewal term, rights in works that had previously been transferred to third parties ("§ 304(c) right"). Under the 1976 Act, persons holding a § 304(c) right may only terminate transfers executed before January 1, 1978. A holder of a § 304(c) right must exercise that right within five years of the original copyright term.

## D.    The 1978 Assignment

On March 16, 1978, Mewborn entered into another agreement assigning to LTI all motion picture, television, radio, recording and dramatic rights, and all merchandising, commercial tie-up and related rights, and certain publication rights ("1978 Assignment"). In exchange, Mewborn received $3,000.00.

## E.    The Parties' Dispute

In 1996, Mewborn served on Palladium Limited Partnership, LTI's successor-in-interest, a notice of termination exercising her § 304 (c) right ("1996 Termination Notice"). The 1996 Termination Notice sought to terminate Mewborn's 1976 Assignment.

On March 23, 2005, Mewborn's attorney sent a letter to Classic, which is the present owner and successor-in-interest to the Lassie Works, as well as its production partners. The letter stated that, as of May 1, 1998, Mewborn owned 25% of the Lassie Works by virtue of the 1996 Termination Notice. As such, Mewborn demanded that Classic account for and pay to Mewborn 25% of all profits generated or received from the exploitation of Classic's film based on the Lassie Works ("Lassie Film"). The Lassie Film was released in U.K. theaters on December 16, 2005.

On May 27, 2005, Classic filed an action against Mewborn seeking a declaratory judgment that Mewborn has no interest in the Lassie Film or in any of the rights she previously assigned to LTI. On June 29, 2005, Mewborn counterclaimed against Classic seeking a declaratory judgment that she recaptured some of the rights she previously assigned to LTI, and requesting an accounting of Classic's profits.[1] On February 9, 2006, the Court granted Classic's Motion for Summary Judgment and denied Mewborn's motion as moot. The Court reasoned that by the time Mewborn entered into the 1978 Assignment, the 1976 Act had already taken effect, giving her the right to terminate any pre-1978 transfers. While this termination interest was inalienable pursuant to the language of the statute, the Court found that such an interest may be waived or relinquished in light of the Ninth Circuit's recent decision in *Milne v. Stephen Slesinger, Inc.*, 430 F.3d 1036 (9th Cir. 2005). Thus, the Court ultimately held that although Mewborn's 1978 Assignment did not contain express language of waiver or

---

[1]    In her original Counterclaim, Mewborn also included a fourth claim for violation of the Lanham Act. This claim was dismissed with prejudice by order of the Court, dated September 28, 2005. The Court held that Mewborn's claim failed to allege a § 43(a) cause of action for false advertising in connection with goods or services.

relinquishment, a review of the contract as a whole, along with the consideration of the 1976 contract, showed such an intent. As a result, the Court granted Classic's Motion for Summary Judgment. Classic now brings the present Motion for Attorneys' Fees.

## III.    JUDICIAL STANDARD

Attorneys' fees are generally not recoverable unless they are provided for by statute or enforceable contract. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 245-46 (1975). Under Federal Rule of Civil Procedure 54(d)(2), "claims for attorneys' fees and related nontaxable expenses shall be made by motion unless the substantive law governing the action provides for the recovery of such fees as an element of damages to be proved at trial." Fed. R. Civ. P. 54(d)(2). In a motion for attorneys' fees, the moving party bears the burden of establishing entitlement to an award and documenting the appropriate rates and hours. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). As a result, an award of attorneys' fees is within the court's discretion and will not be disturbed absent abuse of that discretion. *See Intel Corp. v. Terabyte Intern., Inc.*, 6 F.3d 614, 621 (9th Cir. 1993).

## IV.    DISCUSSION

Classic seeks recovery of attorneys' fees in the amount of $260,017.50. For the reasons set forth below, the Court denies Classic's Motion for Attorneys' Fees.

### A.    Classic is Not Entitled to Attorneys' Fees Under the Copyright Act.

Attorneys' fees are available under 17 U.S.C. § 505.[2] However, they "are to be awarded only as a matter of the court's discretion." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994). A court may award the prevailing party reasonable attorneys' fees by exercising its equitable discretion in light of several non-exclusive considerations. *Id.* at 534. These considerations include: (1) frivolousness; (2) objective unreasonableness both in the factual and legal components of the case; (3) motivation; and (4) the need in particular circumstances to advance the dual goals of compensation and deterrence. *Id.* at 535 n.19.

In the present case, Classic claims that it is entitled to an award of attorney' fees under the Copyright Act because Mewborn's claim was objectively unreasonable, improperly motivated, and because awarding attorneys' fees will serve the dual goals of compensation and deterrence. The Court will address each contention in turn.

#### 1.    *Mewborn's Claim was Not Objectively Unreasonable*

Classic asserts that it is entitled to attorneys' fees because Mewborn's claim was objectively unreasonable. In support, Classic quotes the Court's February 9, 2006 Opinion ("Opinion") which states that "because Mewborn already transferred her interest in all motion picture, television and radio rights in 1976, the only reasonable interpretation of the 1978 contract language is that she intended to give away any additional motion picture, television and radio rights not given away in 1976, thus

---

[2]    17 U.S.C. § 505 provides that: "In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs."

relinquishing her newly acquired right of termination." (Pl.'s Mot. for Att'ys Fees at 6.) However, this conclusion does not mean that Mewborn's claim was objectively unreasonable.

Although Mewborn's copyright claim was ultimately unsuccessful, it was neither frivolous nor brought in bad faith. Mewborn genuinely believed that she was entitled to an interest in the Lassie Works. This was not a case where Mewborn's argument lacked any factual or legal support. Rather, Mewborn's claim presented a close question of law concerning the validity of the § 304(c) right. As the Court's Opinion also stated, the 1978 Assignment did not contain express language waiving or relinquishing Mewborn's § 304(c) right. In fact, Mewborn's termination interest was inalienable pursuant to the language of the statute. However, the Court ultimately held that her § 304(c) right was waived or relinquished based on the Ninth Circuit's recent decision in *Milne v. Stephen Slesinger, Inc.*, 430 F.3d 1036 (9th Cir. 2005). The Ninth Circuit decided *Milne* after Mewborn sent her letter to Classic. Therefore, even though Mewborn's claim ultimately proved meritless, it was not objectively unreasonable as a matter of law. *See Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 357 (6th Cir. 2004) (holding that while plaintiffs' claim ultimately proved meritless, it was not "objectively unreasonable" as a matter of law or fact). Lawsuits commonly involve differences of opinion as to the merits of the case, and in this case it was only after the Court reviewed the facts in light of the decision in *Milne* that the Court granted summary judgment for Classic. Therefore, the Court finds that Mewborn's claim was not objectively unreasonable.

### 2.    *There is Insufficient Evidence of an Improper Motive*

Classic argues that Mewborn's claim was improperly motivated because she waited seven years before asserting her alleged right and then improperly sent letters to Classic's partners and licensees in a strategic effort to hold up Classic's financing at a critical point in its Lassie Film production.

The Court finds these arguments unpersuasive. First, Mewborn relied in good faith on the advice of experienced copyright attorneys that she had a colorable claim before exercising her § 304(c) right. Moreover, she exercised her § 304(c) right consistent with the purposes of the Copyright Act. In addition, Mewborn explained that she only delayed in bringing suit because of her financial limitations and because she was unaware of any derivative works until the Lassie Film in 2005.

The Court finds that Mewborn's explanation is plausible. Although Mewborn may have been dilatory in asserting her § 304(c) right or misguided in her belief that she had a valid cause of action, her claim was not premised upon an improper motive.

### 3.    *An Award of Attorneys' Fees will Not Further the Purposes of The Copyright Act*

Classic argues that the need to advance considerations of compensation and deterrence weigh in favor of a fee award for Classic because Mewborn attempted to take a "third bite at the apple" and deprive Classic of its right to the Lassie Works as successor to the 1978 Assignment.

There is no need for deterrence when neither party has any improper motivation in litigating a case, both parties have an important economic interest, and the matter of the litigation has some importance for Copyright law. *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 2005 WL 2007932 at *6 (N.D. Cal. 2005) (*citing Lotus Development Corp.*, 140 F.3d at 74).

The Court determines that an award of fees would not support the aims of compensation and deterrence. Although Mewborn's letter and suit forced Classic to endure the trouble and expense of forming indemnity agreements with its partners, Mewborn's conduct was not so culpable as to warrant deterrence. First, as discussed above, Mewborn's claim was not objectively unreasonable or improperly

motivated. In fact, the circumstances surrounding the case suggest that Mewborn attempted to pursue her claim in good faith based on an unsettled area of the law; Mewborn presented a close question of law concerning the validity of her § 304(c) right. Second, both parties had a significant economic interest in the rights to the Lassie Works. Third, this litigation has some importance for Copyright law because it ultimately helped the parties to define the parameters of the § 304(c) right.

Thus, taking into account all of the facts and circumstances of this dispute, and in light of the purposes of the Copyright Act, the Court finds an award of attorneys fees in this case to be inappropriate.

In sum, the Court denies an award of attorneys' fees under the Copyright Act.

### B.    Classic is Not Entitled to Attorneys' Fees Under the Lanham Act

Classic contends that it is also entitled to recover attorneys' fees incurred in defending against Mewborn's Lanham Act claim. Classic asserts that Mewborn's Lanham Act claim was groundless because the Lanham Act conditions liability on acts rendered in connection with goods and services and Mewborn's claim concerned intangible property rights, not tangible products.

The Lanham Act permits an award of reasonable attorneys' fees to the prevailing party in "exceptional cases." *Gracie v. Gracie*, 217 F.3d 1060, 1068 (9th Cir. 2000). While the term "exceptional" is not expressly defined in the statute, the Ninth Circuit has found that exceptional circumstances exist when the non-prevailing party's case is groundless, unreasonable, vexatious, or pursued in bad faith. *Id.* at 1071. However, the Ninth Circuit construes the "exceptional case" exception very narrowly. *Id.*

In previous cases courts have held that claims are groundless when they have no legal basis or when they are based on "absurd" or "just short of frivolous" contentions. *See Cairns v. Franklin Mint*, 292 F.3d 1139, 1156 (9th Cir. 2002). This is not applicable in the instant action. Here, although Mewborn did not prevail on her Lanham Act claim, the Court cannot conclude that her claim was wholly groundless. Mewborn's Counterclaim sought a declaration of ownership in the motion picture, television, and radio rights to the Lassie Works. Mewborn presented a tenable claim because if her 1996 Termination Notice was found to be valid, and if she had had an interest in the Lassie Works, then she could arguably have been entitled to any derivatives from her copyright interest, such as tangible copies of the Lassie story or film. Thus, her claim would not have been groundless because it would have concerned a tangible product.

In *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 2005 WL 2007932 at *6 (N.D. Cal. 2005), the court found that although plaintiff was unsuccessful in its trademark infringement claims, plaintiff's claim was not groundless because the case involved issues outside the limits of any previous copyright and trademark decisions. The court also noted that plaintiff's claims could be construed as an attempt to extend existing laws because a close question of law was presented. Similarly, because the instant case involved a legal issue in an area of unsettled law, it should not be considered groundless or unreasonable even though it does not meet the current legal standard.

Therefore, the Court concludes that this case does not warrant recovery of attorneys' fees under the Lanham Act.

## V.    <u>CONCLUSION</u>

In light of the foregoing, Classic's Motion for Attorneys' Fees is **denied**.

**IT IS SO ORDERED.**

Initials of
Preparer        slw